**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
RAFAEL RAYMUNDO DIAZ and JOSE DIAZ,

                Civil Action No._____

      Plaintiffs,

  -against-                       **COMPLAINT**


THE LANTERN ORGANIZATION, INC.,      **Jury Trial Requested**
BILANDER HOUSING
DEVELOPMENT FUND CORPORATION, and
ARETE BUILDING SERVICES CORP.
           Defendants.
------------------------------------------------------------------x

## NATURE OF THE ACTION

1.     Plaintiffs Jose Diaz and Rafael Raymundo Diaz ("Raymundo Diaz") bring this action to recover unpaid wages for work they performed for Defendants Bilander Housing Development Fund Corporation ("Bilander"), Arete Building Services Corp. ("Arete"), and The Lantern Organization, Inc. ("Lantern") between 2007 and 2013.  Plaintiffs are brothers in their early 60s who have limited educations and speak only Spanish. They have been forced to live together in a shared single room in a building owned and operated by Defendants for nearly 15 years.

2.     Plaintiffs were employed by Defendants from February 2007 through November 4, 2013, to work as janitors for the building in which they resided. During this nearly seven year period, Defendants systematically and wilfully failed to pay Plaintiffs their lawful wages despite demanding that Plaintiffs perform full-time and overtime work, including on nights and weekends, attending to the building, cleaning, sweeping, responding to tenant emergencies,

1

showing vacant apartments, and other general duties of residential janitors. Plaintiffs instead were paid true poverty wages – a mere $675 per month between the two of them – regardless of the number of hours they actually worked in a given workweek. Such paltry wages would not have been sufficient had they been for only one of the two Plaintiffs, but in fact these monthly wages were compensation for the full-time and, indeed, overtime services both Plaintiffs performed for Defendants. Defendants were fully aware of the great bargain they were receiving under this illegal compensation arrangement, callously referring to it as a "two-for-one deal" when they hired Plaintiffs in February 2007.

3. Defendants' conduct is particularly egregious given that Defendants have harmed some of the very people of New York City for whom Defendants purport to provide services. Defendants collectively own, operate, and manage multiple single room occupancy ("SRO") buildings that, through substantial financial support from the federal and city governments, supply supportive housing to low-income residents of New York City. Despite Defendants' stated mission of providing services to the poor in New York City – a mission for which Defendants receive substantial public funds – Defendants nevertheless exploited Plaintiffs, under-educated low-income New Yorkers who, because of their poverty wages, have been forced to live together in a single small room for approximately 15 years.

4. Defendants are non-profit and for-profit enterprises that are jointly managed, controlled, and operated, functioning as a single integrated enterprise. Defendants had interrelated operations and shared common management and business addresses. Defendants also jointly controlled Plaintiffs' employment. In 2005, Plaintiffs' employment as janitors in the same building at issue in this case was terminated by a Lantern employee shortly after Bilander acquired the property. Employees of both Bilander and Lantern subsequently participated in the

2

hiring of Plaintiffs in February 2007 to work as janitors at that same building. Between 2007 and 2013, the wages received by Plaintiffs were paid by Lantern Services Corporation and its successor entity, Arete, both of which shared common management through T. Eric Galloway and shared a common business address, as well as Huntersmoon Services Corporation, an entity that, on information and belief, is also controlled and managed by Lantern.

5. Plaintiffs bring this action to recover unpaid wages and other damages resulting from Defendants' wilful and numerous violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and Articles 6 and 19 of the New York Labor Law ("NYLL"), for breach of contract, and for unjust enrichment.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiffs' claims under 29 U.S.C. § 201 *et seq.*, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337(a).

7. This Court has supplemental jurisdiction over Plaintiffs' New York state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as Defendants have a principal place of business in the Southern District of New York, Defendants employed Plaintiffs in this District, the violations described herein took place in this District, and Plaintiffs reside in this District.

## PARTIES

9. Plaintiff Jose Diaz resides at 528 West 123rd Street, Apartment 40, New York, New York 10027. At all relevant times, Jose Diaz was employed by Defendants within the meaning of the FLSA and NYLL as a janitor for the building at 528 West 123rd Street, New York, New York 10027 ("Building").

3

10. Plaintiff Raymundo Diaz resides at 528 West 123rd Street, Apartment 40, New York, New York 10027. At all relevant times, Raymundo Diaz was employed by Defendants within the meaning of the FLSA and NYLL as a janitor for the Building.

11. Defendant Lantern (upon information and belief d/b/a "Lantern Group, Inc." and "The Lantern Group, Inc.") is an active domestic not-for-profit corporation organized under the laws of the State of New York and has a principal place of business at 42 West 39th Street, 14th Floor, New York, New York 10018. Lantern, through receipt of public and private contracts and donations, constructs, buys, and develops affordable housing for low-income New Yorkers, including the Building at issue in this action. During all relevant times, Lantern employed Plaintiffs within the meaning of the FLSA and NYLL.

12. Defendant Bilander is a domestic not-for-profit corporation organized under the laws of the State of New York and has a principal place of business at 690 8th Avenue, 5th Floor, New York, New York 10036. Bilander employed Plaintiffs within the meaning of the FLSA and NYLL from at least June 28, 2005 through June 19, 2013.

13. Defendant Arete, previously registered as "Lantern Services Corporation," is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 42 West 39th Street, 14th Floor, New York, New York 10018, the same business address as Lantern. From at least December 2009, Arete employed Plaintiffs within the meaning of the FLSA and NYLL.

## STATUTORY AND REGULATORY FRAMEWORK

### Fair Labor Standards Act

14. Congress passed the Fair Labor Standards Act in 1938 in order to protect workers from substandard wages, oppressive working hours, and labor conditions detrimental to the

maintenance of a minimum standard of living. The statute has both remedial and humanitarian purposes designed to protect human dignity.

15. At the heart of the FLSA are provisions requiring employers to pay a minimum wage and setting overtime pay rates. 29 U.S.C. § 206.

16. Beginning on July 24, 2009, the federal minimum wage has been set at $7.25/hour.

17. The FLSA requires that employers pay their employees one-and-one-half times the regular hourly rate of their employees' pay for any hours worked in excess of 40 in a workweek. 29 U.S.C. § 207.

18. The FLSA defines "employ" to mean "suffer or permit to work." 29 U.S.C. § 203.

19. The FLSA defines "commerce" to mean "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203.

20. Congress enacted the FLSA to apply to employers "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 202. An enterprise is "engaged in commerce" if it has "employees engaged in commerce or in the production of goods for commerce" or "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and has an annual gross volume of business of not less than $500,000. An enterprise engaged in commerce as set forth in the FLSA is a covered employer under the FLSA and, accordingly, is subject to its minimum wage and overtime provisions. 29 U.S.C. § 203.

21. Multiple entities are considered a single enterprise under the FLSA where they engage in related activities performed through unified operation or common control, for a common business purpose. 29 U.S.C. § 203.

22. Where the facts establish that an individual employee was "employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions, with respect to the entire employment for the particular workweek." 29 C.F.R. § 791.2(a).

23. Defendants constitute an enterprise engaged in commerce because, among other things, they required Plaintiffs as part of their employment to handle supplies and equipment that, on information and belief, originated out-of-state and that were moved in or produced for interstate commerce.

24. At all relevant times, Defendants had an annual gross volume of business of $500,000 or more within the meaning of the FLSA.

25. Employers covered by the FLSA must make, keep, and preserve records with respect to each of its employees that state the wages, hours, and other conditions and practices of employment. 29 U.S.C. §§ 211(c), 215(a).

26. A covered employer under the FLSA that does not make a good faith effort to comply with the FLSA's minimum wage and overtime requirements, resulting in an underpayment or other FLSA violation, is considered to have "wilfully" violated the FLSA, entitling the employee victims of the violations to recover 100% liquidated damages.

27.     The FLSA also allows for the recovery of attorneys' fees, costs, and expenses to a prevailing plaintiff in a FLSA suit.

**New York Labor Law**

28.     The minimum wage and overtime provisions of the New York Labor Law ("NYLL") were enacted to eliminate the condition of uncompensated or undercompensated work. In passing the minimum and overtime wage provisions, the New York Legislature emphasized that uncompensated labor harms workers and the well-being of society as a whole. N.Y. Lab. Law § 650. The Legislature found:

> There are persons employed in some occupations in the state of New York at wages insufficient to provide adequate maintenance for themselves and their families. Such employment impairs the health, efficiency, and well-being of the persons so employed, constitutes unfair competition against other employers and their employees, threatens the stability of industry, reduces the purchasing power of employees, and requires, in many instances, that wages be supplemented by the payment of public attorneys for relief or other public and private assistance. Employment of persons at these insufficient rates of pay threatens the health and well-being of the people of this state and injures the overall economy.

29.     Under the NYLL, any individual, limited liability company, corporation, or organized group acting as an employer is a covered employer who must abide by, *inter alia*, the NYLL's minimum wage and overtime provisions.

30.     Where, as here, multiple entities act together as a single integrated enterprise as a result of their interrelated operations, common management, and common control over labor relations, such entities are jointly liable for violations of the NYLL's minimum wage and overtime provisions.

31.     A covered employee under the NYLL is any individual employed or permitted to work by an employer. N.Y. Lab. Law § 651.

32.     The NYLL established a minimum wage of $7.25 per hour effective July 24, 2009 for most industries, which was increased to $8.00 on December 31, 2013. N.Y. Lab. Law § 652. However, the New York State Department of Labor has promulgated a Minimum Wage Order for the Building Services Industry ("Wage Order"), which sets a separate minimum wage for janitorial employees in residential buildings, known as the "janitorial rate." The janitorial rate as of January 1, 2007 was $4.80 per residential unit in the building per week, and the janitorial rate as of July 24, 2009 was $4.85 per residential unit in the building per week. N.Y. Comp. Codes R. & Regs tit. 12, § 141-1.2. Thus, for example, a residential building with 10 apartments was required by the NYLL to pay its designated janitor $485/week as of July 24, 2009.

33.     The Wage Order defines a "janitor" to mean "a person employed to render any physical service in connection with the maintenance, care or operation of a residential building." N.Y. Comp. Codes R. & Regs tit. 12, § 141-3.4. The Wage Order further states that "[n]o building may have more than one janitor" for purposes of the janitorial wage. When there are multiple janitors in a single building, "the employer shall designate an employee who lives in the building as the janitor." N.Y. Comp. Codes R. & Regs. tit. 12, § 141-3.4. The remaining janitorial staff must receive the minimum wage in accordance with the NYLL and are not subject to the janitorial rate exception in the Wage Order.

34.     The Wage Order requires employers to establish, maintain, and preserve for not less than six years detailed payroll records, including any allowances if claimed, as part of the minimum wage. N.Y. Comp. Codes R. & Regs. tit. 12, § 141-2.1(a).

35.     Where a live-in janitor is allowed to live in a unit of the residential building where he or she works, rent free, the Wage Order allows an employer to deduct a portion of the rent from the janitor's wages, provided that:

      a.      Where, as here, the residential janitors live in a building with more than nine units, in a dwelling not on the first floor, the portion to be deducted may not exceed the average rental on June 1, 1975 of apartments with the same number of rooms, in the same line of the building, including the apartments on the ground and top floors, N.Y. Comp. Codes R. & Regs. tit. 12, § 141-1.5; and

      b.      The employer maintains records for each of the apartments in the building that show for each apartment rental as of June 1, 1975: "(i) apartment number; (ii) floor on which apartment is located; (iii) number of rooms; and (iv) apartment rental." N.Y. Comp. Codes R. & Regs. tit. 12, § 141-2.1.

36.    Utility service charges expended by the employer for the private use of an employee may be considered part of the minimum wage but must not exceed certain set levels. N.Y. Comp. Codes R. & Regs. tit. 12, § 141-1.6. Records of any such allowable offsets, including gas and electric utility payments, must also be maintained by the employer. N.Y. Comp. Codes R. & Regs. tit. 12, § 141-2.1(8).

37.    Building services industry employers are required to post "in a conspicuous place" a notice issued by the New York State Department of Labor summarizing the minimum wage provisions set forth above. N.Y. Comp. Codes R. & Regs. tit. 12, § 141-2.3.

38.    New York Labor Law § 191 requires that an employee be paid no less frequently than every two weeks and that a manual worker be paid no less frequently than weekly.

39.    Where an employer's violation of the NYLL is considered wilful, employees are entitled to 100% liquidated damages for lost wages and overtime accrued on or after April 9,

2011, and 25% liquidated damages for lost wages and overtime that accrued prior to April 9, 2011.

40. The NYLL also allows prevailing plaintiffs to recover pre- and post-judgment interest, costs, and attorneys' fees. N.Y. Lab. Law § 663.

## STATEMENT OF FACTS

### Plaintiffs' Employment

41. Plaintiff Jose Diaz is a 60-year-old monolingual Spanish speaker with approximately a sixth-grade education.

42. Plaintiff Raymundo Diaz is a 62-year-old monolingual Spanish speaker with a limited education.

43. Plaintiffs are tenants of the Building, a ramshackle and old residential building at 528 West 123rd Street, New York, New York 10027 in the Morningside Heights area of Manhattan with forty-three SRO rooms.

44. An SRO building is one in which individual rooms are rented out to tenants who may share common bathrooms and kitchens in the building.

45. Plaintiffs have resided together in the Building continuously since approximately 2001, sharing a single small room on the fourth floor.

46. From 2001 to 2005, and then again from 2007 to 2013, Plaintiffs were employed as janitors in the Building.

47. Plaintiffs' job duties consisted of performing physical services and administrative tasks in connection with maintaining, caring for, operating, and monitoring the Building. Plaintiffs' daily job duties included, *inter alia*:

    a. Cleaning the windows;

      b.    Cleaning the bannisters;

      c.    Cleaning the basement;

      d.    Sweeping and washing the sidewalk;

      e.    Picking up and removing the garbage from the Building, yard, and front lawn; and

      f.    Collecting garbage from the basement.

48. Plaintiffs' job duties further included the following weekly activities:

      a.    Mopping and cleaning all bathrooms;

      b.    Mopping and cleaning all kitchens;

      c.    Removing garbage from all kitchens;

      d.    Mopping and cleaning the entryway; and

      e.    Collecting garbage and recycling from the basement on Tuesdays, Wednesdays, and Sundays.

49. Plaintiffs' job duties further included, on an as-needed basis:

      a.    Mopping common areas when the weather was rainy or snowy;

      b.    Repairing paint, plaster, plumbing, toilets, and ceilings in any apartment where such repair work was needed;

      c.    Cleaning the outsides of apartment windows;

      d.    Responding to late-night plumbing emergencies;

      e.    Being present for building inspections; and

      f.    Showing vacant apartments to prospective tenants.

50. In 2005, shortly after the Building was purchased by Bilander, a meeting of the Building's tenants was held at Huntersmoon Hall, a location operated, upon information and belief, by a Lantern subsidiary.

51. At this meeting, a Lantern employee terminated Plaintiffs' employment by directing them to cease working as the Building's janitors.

52. Thereafter, upon information and belief, the Building was maintained by outside superintendents who rotated their work between the various buildings owned and managed by Lantern and its subsidiaries.

53. During this time, Plaintiffs continued to reside in the Building.

54. In or around 2007, both Plaintiffs met with Julius LaMar, an employee of Bilander who was the Building's manager, and Roberto Chabebe, a social worker employed by Lantern to provide social services within Lantern-managed buildings, to discuss recommencing their work as janitors for the Building.

55. At this meeting, LaMar stated that Plaintiffs were both being hired to work as the Building's janitors but would only receive a single wage, which formally would be paid to only one of the two brothers.

56. LaMar referred to this as a "two-for-one" deal.

57. Thereafter, on or about February 2007, Plaintiffs recommenced working as janitors for the Building.  Neither Plaintiff was designated as the Building's "janitor" under the Wage Order.

58. LaMar further informed Plaintiff Raymundo Diaz that the two brothers' regular work hours were to be Monday through Friday, from 8:00 a.m. to 1:00 p.m. and 4:00 p.m. to 5:00 p.m.

59.     LaMar further stated that both Plaintiffs had to be on call for emergencies at all times, be present for any and all building inspections, and show vacant rooms to prospective renters.

60.     Three months after their employment began in February 2007, Plaintiffs were explicitly told by LaMar that they must work for as many hours as were required to complete their various job duties set forth above.

61.     LaMar provided Plaintiffs with a cellphone so that they could be on call at all times, no matter where they were.

62.     Thereafter, Bilander replaced LaMar with Gustavo Moran, who managed the Building until 2013.

63.     In or around 2013, Bilander replaced Moran with Mario Jablonski, who then supervised Plaintiffs' work until their termination.

64.     On November 4, 2013, Jablonski publicly posted a notice informing all the Building's tenants that "Raymundo Diaz and his brother" were no longer employed at the Building by Lantern. This was the first Plaintiffs had heard that they were to be terminated.

65.     During the time of their employment from February 2007 to November 4, 2013, Defendants never posted any notice issued by the New York State Department of Labor summarizing the minimum wage provisions required by the NYLL.

### Joint Enterprise and/or Joint Employment

66.     Defendants worked in concert and, collectively, constituted a common enterprise, primarily managed and/or controlled by Defendant Lantern.

67.     Defendants were also jointly and severally responsible for Plaintiffs' terms of work and working conditions.

68. The purpose of this joint enterprise was to buy, construct, develop, and manage affordable housing for low-income and/or special needs New Yorkers, including low-income families whose heads of household have HIV or mental illnesses, as well as young adults who have recently aged out of the foster care system.

69. Lantern is the controlling parent of, and manages, a group of subsidiaries that collectively own seventeen affordable housing buildings, including the Building, with several more currently in development. All of these buildings are managed and controlled by Lantern, directly or through its affiliated entities.

70. This joint enterprise finances its activities via public contracts with, *inter alia*, the United States Department of Housing and Urban Development and the New York City Department of Housing Preservation and Development, as well as through private partnerships and donations.

71. All Defendants are under common management, operation, and/or control.

72. T. Eric Galloway is and has been at all relevant times the founder and Chief Executive Officer of Defendant Lantern.

73. Galloway is, upon information and belief, the registered agent of Bilander, and controls and has at all relevant times controlled, Defendant Bilander.

74. Galloway further is and has been at all relevant times the Chief Executive Officer of Defendant Arete, previously registered as Lantern Services Corporation.

75. Upon information and belief, Lantern controls and manages Bilander.

76. Lantern and Arete share their principal place of business at 42 West 39th Street, 14th Floor, New York, New York 10018.

77. Upon information and belief, Bilander conducts substantial portions of its business and receives mail at the same shared place of business as Lantern and Arete: 42 West 39th Street, 14th Floor, New York, New York 10018.

78. Defendants jointly controlled Plaintiffs' employment. In 2005, Plaintiffs' employment as janitors in the Building was terminated by a Lantern employee shortly after Bilander acquired the Building. In February 2007, Plaintiffs were hired at a meeting attended by personnel from both Lantern and Bilander. Plaintiffs' employment was terminated in November 2013 by a notice posted in the Building (which was owned by Lantern) by a Bilander employee. That notice informed the Building's tenants that "Raymundo Diaz and his brother" were no longer employed by Lantern. From February 2007 through Plaintiffs' termination in November 2013, Plaintiffs were paid via checks and paystubs made out to Plaintiff Raymundo Diaz that listed the following entities as payors:

   a. Lantern Service Corporation;
   b. Arete Building Services Corporation, which, upon information and belief, is wholly owned and managed by Lantern; and
   c. Huntersmoon Service Corporation, which, upon information and belief, is controlled and managed by Lantern.

## FIRST CLAIM FOR RELIEF

### Unpaid Wages and Overtime in Violation of the FLSA

79. Plaintiffs reallege and incorporate by reference each and every allegation contained in all preceding paragraphs.

80. Defendants were at all relevant times operating as a single integrated enterprise and were Plaintiffs' employers within the meaning of the FLSA. 29 U.S.C. § 203(d).

15

81. Plaintiffs served as Defendants' employees within the meaning of 29 U.S.C. § 203(e) from 2007 until the termination of their employment in November 2013.

82. Defendants are enterprises engaged in commerce and with annual dollar volume of receipts in excess of $500,000, within the meaning of the FLSA.

83. Defendants failed to pay Plaintiffs $7.50 per hour, the hourly rate stated on Plaintiff Raymundo Diaz's paystubs, for all hours worked, in violation of the FLSA.

84. Defendants failed to pay Plaintiffs the federally mandated minimum wage for all hours worked, in violation of the FLSA.

85. Defendants failed to pay Plaintiffs one-and-one-half times their regular hourly rate of pay for all hours worked over forty in one workweek, in violation of the FLSA.

86. Defendants failed to keep regular and accurate records of the hours Plaintiffs worked, in violation of the FLSA.

87. Defendants' aforementioned failures were wilful, wanton, intentional, and reckless.

88. As a consequence of Defendants' aforementioned violations of the FLSA, Plaintiffs are entitled to recover from Defendants, jointly and severally, unpaid wages and overtime, an additional equal amount in liquidated damages, costs, reasonable attorneys' fees, and pre- and post-judgment interest.

## SECOND CLAIM FOR RELIEF

**Unpaid Minimum Wages and Overtime under the NYLL**

89. Plaintiffs reallege and incorporate by reference each and every allegation contained in all preceding paragraphs.

90. Defendants were employers within the meaning of New York Labor Law §§ 190(3) and 651(6) and acted as a single integrated enterprise under the NYLL at all relevant times.

91. Defendants employed Plaintiffs within the meaning of New York Labor Law §§ 190(2) and 651(5).

92. Defendants failed to pay Plaintiffs $7.50 per hour, the hourly rate stated on Plaintiff Raymundo Diaz's paystubs, for all hours worked, in violation of the NYLL.

93. Defendants failed to pay Plaintiffs the New York State minimum wage for all hours worked, in violation of the NYLL.

94. Defendants failed to pay Plaintiffs one-and-one-half times their regular hourly rate of pay for all hours worked over forty in one workweek, in violation of the NYLL.

95. Defendants failed to pay Plaintiffs one-and-one-half times the New York State minimum wage for all hours worked over forty in one workweek, in violation of the NYLL.

96. Defendants failed to keep regular and accurate records of the hours Plaintiffs worked, in violation of the NYLL.

97. Defendants' aforementioned failures were wilful, wanton, intentional, and reckless.

98. As a consequence of Defendants' aforementioned violations of the NYLL, Plaintiffs are entitled to recover from Defendants, jointly and severally, unpaid wages and overtime, an additional amount equal to 100% accruing on or after April 9, 2011, of unpaid wages and overtime in liquidated damages, an additional amount equal to one quarter of unpaid wages and overtime in liquidated damages accruing before April 9, 2011, costs, reasonable attorneys' fees, and pre- and post-judgment interest.

## THIRD CLAIM FOR RELIEF

### Failure to Provide Notice of Pay Rate and Hours in Violation of NYLL

99. Plaintiffs reallege and incorporate by reference each and every allegation contained in all preceding paragraphs.

100. Defendants failed to provide Plaintiffs with notice of their rate of pay pursuant to New York Labor Law § 195(3).

101. As a consequence of Defendants' violation of the NYLL, Plaintiffs are entitled pursuant to New York Labor Law § 198 to recover damages of $100 for each workweek in which the violations occurred, up to a total of $2,500, together with costs, reasonable attorneys' fees, and any other relief that the Court in its discretion deems necessary or appropriate.

## FOURTH CLAIM FOR RELIEF

### In the Alternative: *Quantum Meruit*

102. Plaintiffs reallege and incorporate by reference each and every allegation contained in all preceding paragraphs.

103. Defendants failed to pay wages for non-gratuitous services rendered in good faith by Plaintiffs, which Defendants willingly accepted.

104. In the alternative to the above-mentioned federal and New York State statutory claims, Defendants are liable at common law for the fair value of services rendered by Plaintiffs.

## FIFTH CLAIM FOR RELIEF

### In the Alternative: Unjust Enrichment

105. Plaintiffs reallege and incorporate by reference each and every allegation contained in all preceding paragraphs.

106. Defendants receive substantial public and private funds in exchange for providing services to low-income and special needs New Yorkers, including affordable apartments in buildings maintained by janitors.

107. By accepting these funds while paying Plaintiffs unlawfully low wages, Defendants have unjustly enriched themselves to Plaintiffs' detriment.

108. It would be against equity and good conscience to permit Defendants to retain the benefit they have received by their failure to pay Plaintiffs' lawful wages.

## **RELIEF REQUESTED**

109. WHEREFORE, Plaintiffs respectfully request that this Court:

   a. Award Plaintiffs damages for unpaid wages in the amount of their regular hourly rate or, in the alternative, in the amount of the federal minimum wage mandated by the FLSA for each hour worked;

   b. Award Plaintiffs damages for unpaid overtime hours worked in the amount of one-and-one-half times their regular hourly rate or, in the alternative, one-and-one-half times the federal minimum wage mandated by the FLSA, for all hours worked in excess of forty in one workweek;

   c. Award Plaintiffs damages for unpaid wages in the amount of their regular hourly rate or, in the alternative, in the amount of the New York State minimum wage for each hour worked;

   d. Award Plaintiffs damages for unpaid overtime hours worked in the amount of one-and-one-half times their regular hourly rate or, in the alternative, one-and-one-half-times the New York State minimum wage, for all hours worked in excess of forty in one workweek;

e. Find that Defendants' unlawful acts and omissions in violation of the FLSA were wilful within the meaning of the FLSA and award Plaintiffs liquidated damages in the amount of 100% of unpaid regular and overtime wages for the three years preceding the initiation of this suit;

f. Find that Defendants' unlawful acts and omissions in violation of the NYLL were wilful within the meaning of the NYLL and award Plaintiffs liquidated damages in the amount of 100% of their unpaid regular and overtime wages accruing on or after April 9, 2011, and 25% of their unpaid regular and overtime wages accruing before April 9, 2011;

g. Award Plaintiffs $100 for each week Defendants failed to provide notice of Plaintiffs' hours and rate of pay, pursuant to the NYLL;

h. Award Plaintiffs reasonable attorneys' fees and costs;

i. Award pre-judgment and post-judgment interest; and

j. Grant such other and further relief as this Court deems necessary and proper.

Dated: November 4, 2015
New York, New York

Respectfully submitted:

*/s/ Julia Rosner*

JULIA ROSNER
CHRISTINE CLARKE
MANHATTAN LEGAL SERVICES
Attorneys for Plaintiffs
1 West 125th Street, 2nd Floor
New York, NY 10027
Tel: (646) 442-3148
Fax: (646) 442-3149